# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MARTIN-PEREZ; FABIAN VILLELA-LOPEZ; TOM ZOGAS, JR.; DONTRETTE HARPER-RICH; RAMON ARREDONDO-DIAZ; and ROBERTO SANTIS-GOMEZ,<br><br>   Defendants-Petitioners,<br><br>v.<br><br>HON. BARBARA L. MAJOR, United States Magistrate Judge for the Southern District of California; HON. PETER C. LEWIS, United States Magistrate Judge for the Southern District of California<br><br>   Respondents-Appellees,<br><br>and<br><br>UNITED STATES OF AMERICA,<br><br>   Real Party In Interest. | Case No.: 3:18-cv-00996-H-JLB<br><br>**ORDER DENYING FIRST AMENDED PETITION FOR WRIT OF MANDAMUS AND REQUEST FOR STAY OR INJUNCTION**<br><br>[Doc. No. 15] |

Before the Court is the First Amended Petition for a Writ of Mandamus and Request for Stay or Injunction, filed on June 6, 2018. (Doc. No. 15.) At issue is whether the Constitution permits the use of leg restraints on criminal defendants during pretrial proceedings before magistrate judges. Specifically, Petitioners challenge the use of leg restraints during their appearances before the duty magistrate judge on May 17, 2018, and before the magistrate judge in El Centro on May 18, 2018. For the reasons discussed in this Order, the Court denies the First Amended Petition and the Request for Stay or Injunction.

## I. The Challenged Proceedings

On May 17, 2018, Fabian Villela-Lopez ("Petitioner Villela-Lopez") appeared before the duty magistrate judge in San Diego for a change-of-plea hearing, and Tom John Zogas, Jr. ("Petitioner Zogas"), appeared for arraignment. (Doc. No. 15 Ex. C.) Each of them was brought into court wearing leg restraints only. (See id.) Petitioner Zogas objected to the restraints, so the magistrate judge had him taken out of the courtroom and trailed the matter to the end of calendar. (Id., Computer-Aided Transcription ("CAT") at 4:8-6:7.) Petitioner Zogas appeared at the end of calendar without any restraints and entered a not-guilty plea. (Id. at 14:17-18; see also United States v. Zogas, 3:18-CR-2488, CM/ECF Doc. No. 25.) Petitioner Villela-Lopez also objected to the use of leg restraints, and the magistrate judge vacated his hearings and set a briefing schedule on the restraint issue. (Doc. No. 15 Ex. C, CAT at 13:15-20.) The magistrate judge identified several factors favoring the use of leg restraints during the duty calendar, including the number of defendants wishing to plead in a timely manner, a "dramatic[]" increase in the number of new prosecutions, and the limited number of available courtrooms. (Id., CAT at 6:20-24, 7:4-6.) The magistrate judge further noted the Supreme Court's recent ruling in United States v. Sanchez-Gomez, 138 S. Ct. 1532 (2018) ("Sanchez-Gomez III"), and expressed her view that use of leg restraints was not constitutional error. (Id. at 7:15-18.) Moreover, the magistrate judge explained that the use of restraints would not influence any of her decisions, nor would it influence the "decorum of the court," given the unlikelihood that any courtroom audience member could see whether the defendants were in leg restraints.

(Id. at 7:20-23.)

Petitioner Villela-Lopez subsequently filed a brief formally withdrawing his objection to the use of leg restraints and entered a guilty plea before the district judge. (See United States. v. Villela-Lopez, 3:18-CR-1988, CM/ECF Doc. Nos. 17, 19.) He remains in custody.

On May 18, 2018, Ramon Arredondo-Diaz ("Petitioner Arredondo-Diaz") and Roberto Santis-Gomez ("Petitioner Santis-Gomez") appeared in magistrate court in El Centro for their initial appearances, wearing leg restraints. (Doc. No. 15 Ex. E.) Both made oral motions for removal of the leg restraints, and the magistrate judge denied the motions. (United States v. Arredondo-Diaz, 2:18-MJ-8786, CM/ECF Doc. No. 3; United States v. Santis-Gomez, 2:18-MJ-8787, CM/ECF Doc. No. 2.) Petitioners Arredondo-Diaz and Santis-Gomez are scheduled for their respective arraignments and have each been appointed the same CJA attorney. They remain in custody. In denying the motions regarding the leg restraints, the magistrate judge observed the "great increase" in the number of defendants and his belief that "everyone deserves a speedy resolution of their cases" in addition to "be[ing] advised of their rights." (Doc. No. 15 Ex. E.) The magistrate judge further noted that he didn't think the court could complete its calendar by the end of the day if the defendants were brought out "unrestrained." (Id.)

On May 18, 2018, Jose Martin-Perez, Fabian Villela-Lopez and "other individuals subject to in-court shackling on May 15, 2018," filed a Petition for a Writ of Mandamus and Request for Stay.[1] (Doc. No. 1.) On May 21, 2018, the Court issued an order to show cause, requesting that Federal Defenders of San Diego identify the individuals they are representing in this matter. (Doc. No. 4 (citing Sanchez-Gomez III, 138 S. Ct. at 1539

---

[1] Jose Martin-Perez appeared before the duty magistrate judge on May 17, 2018, and objected to wearing leg restraints. (Doc. No. 15 Ex. C.) He has since pleaded guilty and is out on bond. See United States. v. Martin-Perez, 3:18-CR-1897, CM/ECF Doc. Nos. 24, 25.) Because it is speculative whether Mr. Martin-Perez will be directed to appear in court wearing leg restraints again, his case no longer presents a live controversy for purposes of the instant petition. Cf. Sanchez-Gomez III, 138 S. Ct. at 1540-41.

(holding no class action permitted for criminal cases)).)

On May 22, 2018, Fabian Villela-Lopez, Tom Zogas, Jr., Ramon Arredondo-Diaz, and Roberto Santis-Gomez (collectively, "Petitioners") filed a motion for leave to amend the petition.[2] (Doc. No. 6.) On June 6, 2018, the Court granted Petitioners leave to amend. (Doc. No. 14.) By the First Amended Petition, Petitioners seek an order directing the magistrate judges to refrain from placing pretrial detainees in leg restraints unless there has been an "individualized determination[] of need." (Doc. No. 15-1 at 1.) On June 6, 2018, the United States of America, real party in interest, filed its opposition to the First Amended Petition. (Doc. No. 13.)

The Court held a hearing on the matter on June 8, 2018. (Doc. No. 19.) Reuben Cahn, Kara Lee Hartzler, Vincent Brunknow, and Harini Raghupathi appeared for Petitioners, and Daniel E. Zipp appeared for the United States. (Id.) Following oral argument, both sides submitted on the pleadings and stated they were not requesting an evidentiary hearing.

## DISCUSSION

### I. Petition for a Writ of Mandamus

#### A. Legal Standard for Mandamus Relief

"The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The writ of mandamus, however "is an 'extraordinary' remedy limited to 'extraordinary' causes." Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court, 408 F.3d 1142, 1146 (9th Cir. 2005) (quoting Cheney v. U.S. Dist. Court, 542 U.S. 367, 380 (2004)). Indeed, it is one of "the most potent weapons in the judicial arsenal." Cheney, 542 U.S. at 380 (quoting Will v. United States, 389 U.S. 90, 107

---

[2] An additional named Petitioner, Dontrette Harper-Rich, is out on bond awaiting his preliminary hearing. Thus, like Jose Martin-Perez, Mr. Harper-Rich's case no longer presents a live controversy for purposes of the instant petition. (See United States v. Lajoyce Harper-Rich, 2:18-MJ-8784, CM/ECF Doc. No. 19.)

(1967)). As a result, the petitioner must "prove a right to issuance of the writ that is 'clear and indisputable.'" In re Sussex, 781 F.3d 1065, 1070 (9th Cir. 2015) (quoting DeGeorge v. U.S. Dist. Court, 219 F.3d 930, 934 (9th Cir. 2000)).

When deciding whether to grant mandamus relief, the Court weighs five factors that amount to a "distillation" of the Supreme Court's case law: (1) whether the petitioner has no other means, such as a direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in any way not correctable on appeal; (3) whether the challenged order is clearly erroneous as a matter of law; (4) whether the challenged order is an oft-repeated error or manifests a persistent disregard of the federal rules; and (5) whether the challenged order raises new and important problems or issues of first impression. See Burlington, 408 F.3d at 1146 (citing Bauman v. U.S. Dist. Court, 557 F.2d 650 (9th Cir. 1977)); see also Perry v. Schwarzenegger, 591 F.3d 1147, 1156 (9th Cir. 2010).

Although not every Bauman factor need be present for the court to grant mandamus relief, "the absence of the third factor, clear error, is [usually] dispositive." Id. (quoting Burlington, 408 F.3d at 1146). The "clear error" factor establishes a high threshold, as it "is significantly deferential and is not met unless the reviewing court is left with a 'definite and firm conviction that a mistake has been committed.'" In re United States, 791 F.3d 945, 955 (9th Cir. 2015) (quoting Concrete Pipe & Prods. v. Constr. Laborers Pension Tr., 508 U.S. 602, 622 (1993)). Furthermore, the Bauman factors are not exhaustive, Calderon v. U.S. Dist. Court, 163 F.3d 530, 534 (9th Cir. 1998), and even if all of the factors are satisfied, the Court is not compelled to grant the writ, see In re Sussex, 781 F.3d at 1071.

Relatedly, the Bauman factors "are not susceptible of mechanical application"; rather, they "serve only as a useful starting point, an analytic framework for determinations regarding the propriety of mandamus relief." In re Cement Antitrust Litig., 688 F.2d 1297, 1301 (9th Cir. 1982); see Perry, 591 F.3d at 1156. To that end, the factors may be less applicable, or applied differently, in supervisory mandamus "cases involving questions of law of major importance to the administration of the district courts." In re Cement, 688

F.2d at 1301, 1307. Ultimately, "the decision whether to issue the writ is within the discretion of the court." Cole v. U.S. Dist. Court, 366 F.3d 813, 817 (9th Cir. 2004).

### B. United States Marshals Service and Courtroom Security

The United States Marshals Service was created by the Judiciary Act of 1789 to ensure the safety of federal court personnel, litigants, and the public. Act of Sept. 24, 1789, ch. 20, § 27, 1 Stat. 87. Indeed, the "primary role and mission of the United States Marshals Service [is] to provide for the security" of the federal judiciary, including the U.S. district courts. 28 U.S.C. § 566(a). Although Congress instructed the Marshals Service to "consult with the Judicial Conference of the United States on a continuing basis regarding the security requirements for the judicial branch," the Marshals Service nevertheless "retains final authority regarding security requirements for the judicial branch of the Federal Government." Id. § 566(i).

The Marshals Service sometimes uses physical restraints, such as handcuffs or leg restraints, "to prevent [prisoners] from injuring themselves or others and/or to prevent property damage." See U.S. Marshals Service, *Policy Directives* § 9.18.D, E.1.c, https://www.usmarshals.gov/foia/directives/prisoner_operations.pdf (last visited June 8, 2018). Prisoners are placed in handcuffs or full restraints during transportation between the cellblock and the court, for example. Id. § 9.18.E.3.a. For non-jury courtroom proceedings, the Marshals Service endorses the use of full restraints unless a district judge or magistrate judge directs otherwise. See id. § 9.18.E.3.b. According to statements made by the United States at oral argument in Sanchez-Gomez III, out of the 300 total U.S. Marshals field offices, roughly half use full restraints at all initial courtroom appearances. Oral Argument at 58:26, Sanchez-Gomez III, https://www.oyez.org/cases/2017/17-312. Another 100 field offices use leg restraints only, and 50 field offices use no restraints at all. Id.

"Courtroom security concerns are particularly acute in the five judicial districts—the Southern District of California, the Districts of Arizona and New Mexico, and the Western and Southern Districts of Texas—on the Nation's southwest border." Brief for the United States at 4, Sanchez-Gomez III, 2018 WL 620244. As of January 2018, those five

6

3:18-cv-00996-H-JLB

"districts alone account[ed] for nearly 40% of the Marshals Service's total daily prisoner population," and "handl[ed] a large volume of criminal cases arising from reactive arrests, where the arresting agent typically will know far less about the defendant's background and behavior than agents effectuating arrests following proactive investigations." Id.

On April 6, 2018, the U.S. Attorney General issued a memorandum to all federal prosecutors along the southwest border, directing them to adopt a "zero-tolerance policy" for all offenses referred for prosecution under 8 U.S.C. § 1325(a)—the statutory provision that criminalizes an alien's improper entry into the United States. See U.S. Attorney General, *Zero-Tolerance for Offenses Under 8 U.S.C. § 1325(a)* (Apr. 6, 2018), https://www.justice.gov/opa/press-release/file/1049751/download. The Court takes judicial notice of the United States' case statistics, which indicate that the number of criminal prosecutions in this district for fiscal year 2018 will exceed 7,000. (Doc. No. 13 at 9 n.5.) This signifies a substantial increase from 2017 levels. See U.S. Courts, *Table D— U.S. District Courts—Criminal Federal Judicial Caseload Statistics 2017* http://www.uscourts.gov/sites/default/files/data_tables/fjcs_d_0331.2017.pdf (reporting 3,617 criminal cases filed in the Southern District of California in 2017).

### C. Analysis of the Instant Petition

Having carefully considered the parties' arguments and the record, the Court concludes that the circumstances here do not warrant the extraordinary remedy of a writ of mandamus. Given the unsettled state of the law regarding the use of only leg restraints during pretrial proceedings, the Court is not convinced that the magistrate judges' conduct here was clearly erroneous as a matter of law, and the remaining Bauman factors do not favor granting the writ. See Burlington, 408 F.3d at 1146.

In Deck v. Missouri, the Supreme Court's most recent case reaching the merits of shackling, the court enumerated "three fundamental legal principles" undermined by the use of shackling: (1) the presumption of innocence and the related fairness of the factfinding process; (2) the right to counsel and a meaningful defense; and (3) the need for a dignified judicial process, "which includes the respectful treatment of defendants." 544

U.S. 622, 630-32 (2005). During the guilt phase of trial or the penalty phase of a capital case, defendants may not be placed in physical restraints visible to the jury absent "an essential state interest—such as the interest in courtroom security—specific to the defendant on trial." Id. at 624. The Supreme Court has not addressed the constitutionality of placing defendants in physical restraints during pretrial proceedings, as opposed to during the guilt or penalty phases of trials, but Deck did observe that the common-law rule against placing defendants in leg restraints visible to the jury during trial "did not apply at the time of arraignment or like proceedings before the judge."[3] Id. at 626 (internal quotation marks and citation omitted).[4]

Sanchez-Gomez II held that, absent an individualized determination of need, due process prohibits the use of physical restraints "whether the proceeding is pretrial, trial, or sentencing, with a jury or without." See United States v. Sanchez-Gomez, 859 F.3d 649, 661 (9th Cir. 2017) (en banc). The Supreme Court's vacatur of Sanchez-Gomez II, however, leaves the law somewhat unsettled. Sanchez-Gomez III, 138 S. Ct. at 1536; see Durning v. Citibank, N.A., 950 F.2d 1419, 1424 n.2 (9th Cir. 1991). Furthermore, Sanchez-Gomez II is at odds with two sister circuits' holdings regarding physical restraints in non-jury proceedings. See United States v. LaFond, 783 F.3d 1216, 1225 (11th Cir. 2015) (holding the Constitution does not forbid placing a defendant in leg restraints during a sentencing hearing before a district judge); United States v. Zuber, 118 F.3d 101, 103-04 (2d Cir. 1997) (same).[5]

//

---

[3] The Court notes that the Federal Public Defenders presented argument regarding the historical use of physical restraints in their brief to the Supreme Court. See Brief for Respondents in Opposition to the United States' Petition for Writ of Certiorari at 22-30, Sanchez-Gomez III, 2017 WL 7275610.

[4] In Sanchez-Gomez II, the majority and dissent disagreed about whether Deck's statement regarding pretrial proceedings was dictum. See 859 F.3d at 663, 678. This very disagreement supports the conclusion that a writ of mandamus is not appropriate here.

[5] This Court finds the en banc court's opinion in Sanchez-Gomez II persuasive. As noted in that opinion, though, this Court opted out of any full restraints from the beginning and continues to do so, absent a particularized need.

8

Deck, as well as previous Ninth Circuit opinions, suggests that adequate justification must exist for placing defendants in physical restraints, and that a case-specific approach is appropriate when determining whether such justification exists. See Deck, 544 U.S. at 632 ("[G]iven their prejudicial effect, due process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case."); id. at 634 (describing its holding as "requiring a case-by-case determination"); United States v. Brandau, 578 F.3d 1064, 1065 (9th Cir. 2009) ("We have not . . . fully defined the parameters of a pretrial detainee's liberty interest in being free from shackles at his initial appearance, or the precise circumstances under which courts may legitimately infringe upon that interest in order to achieve other aims, such as courtroom safety.").

In United States v. Howard, for example, the Ninth Circuit held that a district-wide policy of placing pretrial detainees in leg restraints during their first appearance before a magistrate judge did not violate the detainees' due process right, in light of "legitimate security concerns" associated with a particular federal courthouse. 480 F.3d 1005, 1013-14 (9th Cir. 2007). Similarly, the Sanchez-Gomez I court assessed the circumstances surrounding this district's physical-restraint policy but concluded that, unlike in Howard, the record did not evince adequate justification for placing defendants in full restraints for most non-jury proceedings. See United States v. Sanchez-Gomez, 798 F.3d 1204, 1207-09 (9th Cir. 2015). Relatedly, in Sanchez-Gomez II, a narrow majority of the en banc court framed its inquiry as turning on whether the circumstances reveal "an individualized showing of need" for physical restraints. See 859 F.3d at 662. Moreover, the five-member dissent in Sanchez-Gomez II argued that the propriety of using physical restraints on pretrial detainees should depend on "facts specific to [the courts'] situations, including such factors as the adequacy of staffing by security professionals, the configurations of the courtrooms, and prior experiences." 859 F.3d at 683 (Ikuta, J., dissenting).

Here, Petitioners have not established that the magistrate judges' conduct was clearly erroneous as a matter of law, nor do the remaining Bauman factors justify granting the

9

3:18-cv-00996-H-JLB

extraordinary remedy of mandamus relief.[6] Accordingly, the Court denies the petition for a writ of mandamus. Unlike the Sanchez-Gomez litigation, the matter currently before the Court concerns the use of leg restraints, rather than full restraints, and thus signifies a less severe infringement on detainees' liberty interest. And the record shows what appears to be adequate justification for that infringement, to the extent infringement occurred in each Petitioner's case. For example, two Petitioners who appeared before the magistrate judge objected to the leg restraints and were given a briefing schedule. As the hearing transcript reflects, the magistrate judge delineated the reasons she believed leg restraints were necessary, including the number of defendants wishing to plead in a timely manner, a "dramatic[]" increase in the number of new prosecutions, and the limited number of available courtrooms. (Doc. No. 15 Ex. C, CAT at 6:20-24, 7:4-6.) The magistrate judge further noted the Supreme Court's ruling in Sanchez-Gomez III, expressed her view that use of leg restraints was not constitutional error, and explained that the use of leg restraints would not influence any of her decisions. Moreover, because it was very unlikely that any courtroom audience member could see whether the defendants were wearing restraints, the magistrate judge reasoned, there was no adverse effect on the "decorum of the court." (Id. at 7:15-18, 7:20-23.) In response to another Petitioner's objection to leg restraints, the magistrate judge trailed the matter to the end of calendar, and that Petitioner later appeared in court without the restraints.

//

---

[6] In terms of the remaining Bauman factors, first, Petitioners are not without other avenues for relief. Should the issue of leg restraints arise again during pretrial proceedings, defendants can request an individual determination of need as well as a briefing schedule or continuance, if appropriate. And as mentioned below, individual defendants can raise the leg-restraint issue on appeal from final judgment in their respective criminal cases or bring a civil suit challenging the use of leg restraints. Moreover, the challenged proceedings do not present an "oft-repeated error" or "persistent disregard of the federal rules"; the record shows, for example, that the magistrate judges endeavored to justify the use of leg restraints and, in one petitioner's case, trailed the matter to the end of calendar and brought him into court restraint-free. In addition, the issue of physical restraints during non-jury criminal proceedings is not one of first impression. See, e.g., Sanchez-Gomez II, 859 F.3d 649; Sanchez-Gomez I, 798 F.3d 1204; Howard, 480 F.3d 1005.

The Court notes that there are special security concerns associated with the early stages of criminal proceedings. Importantly, there is often incomplete security and criminal-history information about new detainees in this district. Sanchez-Gomez II, 859 F.3d at 667 (Ikuta, J., dissenting). Many detainees are citizens of foreign countries, may have multiple aliases, and have not developed a track record of compliance. Id. And as mentioned above, this district handles a high volume of prisoners due to its jurisdiction over border crimes, adding to security concerns. Id.

Considering the circumstances of Petitioners' individual cases, as well as the magistrate judges' stated reasons for the leg restraints, the Court is not "definite[ly] and firm[ly]" convinced that a mistake was committed. See In re United States, 791 F.3d at 955. The Court cautions, however, that a "one-size-fits-all" policy for physical restraints is not appropriate and that courts should, to the extent possible, analyze the need for physical restraints in the courtroom with respect to particular detainees or defendants. Given the significant range of possible circumstances in each courtroom, the Court does not "suggest that judges are necessarily required to document the need for [physical restraints] in any particular manner, as for example, with statistics or the infeasibility of less restrictive alternatives." See Sanchez-Gomez I, 798 F.3d at 1209. But a court should, in its sound discretion, consider the totality of the circumstances, weighing the government's interest in using physical restraints with the criminal defendant's liberty interest in appearing restraint-free. See Howard, 480 F.3d at 1008; Deck, 544 U.S. at 630-32. A court performing this analysis should take care to give effect to "three fundamental legal principles," namely, the presumption of innocence, the right to counsel, and the dignity and decorum of the courtroom. See id.

## II. Collateral Order Doctrine

Petitioners submit that the Court could, alternatively, construe their First Amended Petition as a collateral order appeal of the magistrate judges' decisions to place them in leg restraints in their individual criminal cases. (Doc. No. 15-1 at 20 n.4.) The Court declines to do so.

Under Federal Rule of Criminal Procedure 58, a party may appeal an order of a magistrate judge to the district judge "if a district judge's order could similarly be appealed." Fed. R. Crim. P. 58(g)(2)(A); see also id. 58(g)(2)(D) ("The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge."). Courts of appeals, in turn, have jurisdiction only over appeals from "final decisions of the district courts." 28 U.S.C. § 1291. "[T]he term 'final decision' normally refers to a final judgment, such as a judgment of guilt, that terminates a criminal proceeding." Sell v. United States, 539 U.S. 166, 176 (2003). The collateral order doctrine, however, "carve[s] out a narrow exception to the normal application of the final judgment rule," but only for a "limited class" of collateral rulings. Midland Asphalt Corp. v. United States, 489 U.S. 794, 798-99 (1989) (citing Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949)). To fall within that "limited class," a ruling "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978) (citation omitted).

Despite "numerous opportunities" to expand the collateral-order exception's scope, the Supreme Court has interpreted the exception "with the utmost strictness in criminal cases," Midland, 489 U.S. at 799, identifying only four types of pretrial orders that are immediately appealable: an order denying a motion to reduce bail, an order denying a motion to dismiss on double jeopardy grounds, an order denying a motion to dismiss under the Speech or Debate Clause, see id. (collecting cases), and an order permitting the forced administration of antipsychotic drugs to render a defendant competent for trial, see Sell, 539 U.S. at 177.

In this case, expansion of the collateral-order exception beyond these four types of criminal pretrial orders does not appear warranted. Determinations regarding leg restraints are not otherwise "unreviewable," as the individual defendants can raise the leg-restraint issue on appeal from final judgment in their respective criminal cases, or they can initiate a civil suit challenging the use of leg restraints. The Court is especially mindful that the

Supreme Court itself "has been asked many times to expand the 'small class' of collaterally appealable orders, [but] ha[s] instead kept it narrow and selective in its membership." Will v. Hallock, 546 U.S. 345, 350 (2006). The consequences of broadening that membership here would be significant. By permitting appellate-court interference with the many courtroom-security decisions that this district's judges "must make in the pre-judgment stages of litigation," the Court would likely run afoul of the very concern for "efficient administration of justice" that underlies the final-judgment rule. See Flanagan v. United States, 465 U.S. 259, 263-64 (1984). Accordingly, the Court declines to treat the Petition as an appeal of a collateral order.[7]

### III. Motion for Stay or Injunctive Relief

Petitioners also seek a stay or injunctive relief to prevent the use of leg restraints where there has been no individualized determination of need, pending resolution of mandamus proceedings. (Doc. No. 15 at 20-25.) The Court finds that neither remedy is appropriate.

Courts apply a similar equitable standard to requests for stays and for injunctive relief. Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir. 1983). In deciding whether to issue a stay, courts consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 556 U.S. 418, 425-26 (2009). Similarly, in ruling on a motion for injunctive relief, courts consider (1) whether the moving party is likely to succeed on the merits; (2) whether the moving party is likely to suffer irreparable harm absent injunctive relief; (3) whether the balance of equities tips in the moving party's favor; and (4) whether injunctive relief would be in the public interest. Glossip v. Gross, 135 S. Ct. 2726, 2736-37 (2015) (citation

---

[7] Additionally, the collateral order doctrine in criminal cases is subject to different procedures than a petition for a writ of mandamus in civil cases, and would be contrary to the Court's random-draw practice for appeals of magistrate matters in criminal cases.

13

omitted).

Having thoroughly considered the parties' arguments, the record, and the applicable factors, the Court concludes that Petitioners have not made a sufficient showing to warrant the requested stay or injunctive relief at this time.[8]

## CONCLUSION

For the reasons discussed above, the Court **DENIES** the First Amended Petition for a Writ of Mandamus and **DENIES** the Request for a Stay or Injunctive Relief at this time. (Doc. No. 15.)

**IT IS SO ORDERED.**

DATED: June 8, 2018

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[8] The Court notes that Petitioners did not pay a filing fee or file a motion to proceed in forma pauperis, although Petitioners have represented that they will file a motion to proceed in forma pauperis. The Supreme Court's decision in Sanchez-Gomez III makes clear that procedure matters, see 138 S. Ct. 1532, and this Court encourages all parties to adhere to relevant procedural rules.